Vincent Salminen
Scheveck & Salminen Law Firm, PLLC
2223 Montana Avenue Suite #103
Billings, MT 59101
Telephone: (406) 894-2121
vince@schevecklaw.com
Attorney for Plaintiff

FILED
AUG 23 2018
Clerk, U S District Court
District Of Montana
Billings

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| GEORGIA STECKLY,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN STARR, HEARTLAND PONDEROSA LIMITED PARTNERSHIP, HEARTLAND REALTY INVESTORS, INC.,<br><br>Defendants. | Case No. CV-18-127-BLG-SPW-TJC<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, Georgia Steckly, (hereinafter "Georgia") by and through her attorney of record, Vincent Salminen of the Scheveck & Salminen Law Firm, PLLC, and for her Complaint against named Defendants and complains and alleges as follows:

## PARTIES

1. Plaintiff, Georgia Steckly, was at all times a citizen of the United States and at all times relevant to this matter, a resident of the State of Montana.

2. Defendant, Brian Starr, was the Regional Property Manager for Heartland Realty Investors, Inc., at the Ponderosa Acres property in Billings, Montana, at all times relevant to this matter. Brian Starr was in charge of managing Ponderosa Acres and ensuring it was in compliance with state and federal regulations. Brian Starr was a citizen of the United States and was domiciled in the State of Montana at all times relevant to this matter.

3. Defendant, Heartland Ponderosa Limited Partnership, is a Minnesota limited partnership registered to do business in the state of Montana, which received federal funding. At all times relevant to this matter, it subjected itself to laws of the State of Montana by conducting ongoing and regular business within the State. This entity is expired as of August 1, 2017.

4. Defendant, Heartland Realty Investors, Inc., is a Minnesota corporation registered to do business in the state of Montana, which receives federal funding. At all times relevant to this matter, it subjected itself to laws of the State of Montana by conducting ongoing and regular business within the State.

## BASIS FOR JURISDICTION

5. Count I of this complaint is brought under Section 504 of the Rehabilitation Act of 1973. Accordingly, this Court has federal question jurisdiction over this count pursuant to 28 U.S.C. § 1331.

6. The Court has supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367(a) because they arise from the same case or controversy.

7. Venue is proper under 28 U.S.C. § 1391(b) because all of the events giving rise to the claims occurred in this district.

## DEMAND FOR JURY TRIAL

8. Georgia Steckly demands a jury trial in this matter.

## FACTS

9. Georgia Steckly was born April 27, 1965 and is now 53 years old.

10. In 1984 Georgia was diagnosed with degenerative disk disease and had to undergo three surgeries back to back. After she recovered from the surgeries she was permanently disabled.

11. Georgia has had trouble with her disability since 1984 and has used a walker to help her walk ever since.

12. In 2014, Georgia was in need of low income housing due to her disability.

13. Georgia applied for a Section-8 apartment at Ponderosa Acres in Billings, MT, in or around 2014.

14. She specifically requested a ground level apartment because of her disability and because she uses a walker every day to walk. The Defendants took notice that Georgia was disabled and needed accommodations to facilitate her disability.

15. Ponderosa Acres and its employees, including Tasha Glendenning and Brian Starr, knew Georgia was disabled and used a walker every day.

16. There were other residents who lived at Ponderosa Acres who were also disabled and needed special accommodations. The Defendants did not provide adequate accommodations for their disabled residents.

17. Ponderosa Acres is a Project Based Section-8 housing complex at 1301 Industrial Avenue in Billings, Montana, 59101. Ponderosa Acres was owned and operated by Heartland Ponderosa Limited Partnership until August 1, 2017. Now it is owned and operated solely by Heartland Realty Investors, Inc.

18. Heartland Realty Investors, Inc. and Heartland Ponderosa Limited Partnership are one in the same company.

19. At all times relevant to this matter, Ponderosa Acres and its owners and operators received federal funding from HUD to provide Project Based Section-8 housing.

20. Because Ponderosa Acres receives federal funding, the Defendants are required ensure the property is in compliance with the provisions of Section 504 of the Rehabilitation Act of 1973 ("Section 504"). The Defendants were aware of their duty to comply with Section 504 and are required to complete Section 504 reviews and maintain Section 504 compliance plans, and develop a Section 504 transition plan for making structural changes to facilities.

21. The Defendants had a duty to provide adequate accommodation to their residents including disabled residents. These accommodations include but are not limited to wheelchair accessible curbs and ramps, handrails, and handicapped parking.

22. The Defendants knew they were not in compliance with Section 504 and did not provide the required accommodations to their disabled residents at Ponderosa Acres. The Defendants knew a severe injury would occur due to their failure to provide the disability accommodations.

23. Georgia waited for a ground level apartment to become available at Ponderosa Acres for nearly two years. During this time, she lived with her son and his

family in Billings. They helped Georgia with her everyday life and provided transportation for her because of her disability.

24. In January of 2016, she was informed a ground level apartment was available at Ponderosa Acres.

25. Georgia moved into this ground level apartment at Ponderosa Acres in or around February 2016. Ponderosa Acres employee Tasha Glendenning did the walkthrough of the apartment and facility with Georgia.

26. Shortly after moving in, Georgia discovered that Ponderosa Acres was not handicapped accessible. Ponderosa Acres lacked recessed curbs for wheelchair or walker access throughout the facility and grounds. Ponderosa Acres lacked wheelchair and walker accessible ramps to and from the apartment buildings on the premises including Georgia's building.

27. Ponderosa Acres had a strict parking policy which only allowed residents to park on the premises. Georgia did not drive and did not have a vehicle. Her son and his wife transported Georgia where she needed to go with their vehicle.

28. Georgia's son and wife were not allowed to park on Ponderosa Acres premises and had to park on the street. Therefore, Georgia had to walk, with her walker, from her apartment building across the lawn, then down a curb, across the

driveway, up a curb, then across another lawn to the street to get to her family's vehicle. She had to do this in winter months also.

29. Georgia made verbal complaints to Ponderosa Acres employees, Tasha Glendenning and Brian Starr about parking on Ponderosa Acres premises. She requested that her family be able to park on premises to allow her easier access to their vehicle. Both employees told Georgia no and that her family had to park on the street. Both employees, and the Defendants, knew Georgia was disabled and that her family provided her with transportation.

30. Georgia made complaints about the lack of recessed curbs and lack of wheelchair and walker accessible ramps to both Tasha Glendenning and Brian Starr. These conditions were unsafe. Nothing was done to remedy Georgia's complaints of unsafe conditions.

31. From February 2016 until September 2016, Georgia was forced to maneuver with her walker up and down non-recessed curbs to access the street to receive transportation from her family. There were not handicapped ramps or handrails available either where Georgia had to access the street for transportation.

32. On the evening of September 3, 2016, Georgia returned to Ponderosa Acres with her daughter in-law and granddaughter after grocery shopping. They

parked on the street where they normally parked the vehicle. Georgia got out of the vehicle with her walker and proceeded to cross the lawn, she descended the first curb, walked across the drive way, then attempted to ascend the curb that lead to the lawn in front of her apartment.

33. While ascending the curb, which was not recessed in any location, Georgia's walker caught on the curb and she stumbled backward and landed headfirst. She felt the bones in her neck crunch and immediately felt extreme pain in her neck and throughout her body.

34. Georgia's son was able to help carry her into her apartment after she refused to go to the hospital by ambulance. She laid in bed for two days in extreme pain before she finally went to the hospital by ambulance.

35. The x-rays taken showed Georgia had a severe broken neck. She was put in a neck brace and received two surgeries on her neck in October of 2016. Georgia's neck was fused which caused extreme pain and lack of mobility. Her disabled state became much worse than it was prior to September 3, 2016.

36. After Georgia's surgery, her son and his family decided to move in with Georgia to help her recover. Georgia's doctor recommended this and provided a letter to Ponderosa Acres requesting that she receive help from her family. A copy of this letter was given to Brian Starr.

37. Georgia's son, his wife, and their two children, who were young and dependent on their parents, moved in with Georgia in October 2016.

38. In or around 2017, the Defendants added wheelchair accessible ramps on Ponderosa Acres property in lieu of the fall Georgia sustained months earlier.

39. In or around April 2017, Brian Starr kicked Georgia and her family out of Ponderosa Acres because Georgia's son's two children were living on the premises too and the doctor's note only mentioned Georgia's son and his wife.

40. After being kicked out of Ponderosa Acres, Georgia was forced to live in a motel and the eventually had to move to Ulysses, Nebraska, to live with other family who could help her with her disability and help her recover.

41. Since September 3, 2016, when Georgia fell on Ponderosa Acres property because of the lack of handicapped accessible curbs, ramps, or parking, her life has not been the same. She suffers from extreme pain every day and her quality of life is extremely diminished. She can longer turn her head left or right, her mobility is more limited than it was before the fall, she loses sleep every night, she cannot work, she cannot drive a vehicle at all, and she cannot play with her grandchildren.

42. Due to the fall on Ponderosa Acres property, Georgia has pain and suffering and will continue to have pain and suffering until she dies. She has endured

multiple surgeries, countless hours of rehabilitation and other medical procedures. She will need future medical procedures also. She has suffered emotional distress because of this fall.

## COUNT I - VIOLATION OF § 504 OF THE REHABILITATION ACT
## (AGAINST ALL DEFENDANTS)

43. Georgia repeats and realleges each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. (Section) 794 (Section 504), and the regulations promulgated there under, 34 C.F.R. Part 104, prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion from participation in, or being denied the benefits of, or being subjected to, discrimination under any program or activity receiving federal financial assistance.

45. One form of prohibited discrimination is the exclusion from an entity, receiving federal funds, services, programs, or activities because of the inaccessibility of the entity's facilities.

46. The access requirements are set forth in 28 C.F.R. §§ 35.149–35.151. Section 35.150 requires an entity to "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). The entity is required to develop a transition plan for making structural changes to facilities in order to make its programs accessible. *Id.* at § 35.150(d)(1). The regulation also requires the transition plan to include a schedule for providing curb ramps to make pedestrian walkways accessible. *Id.* at § 35.150(d)(2). Section 35.151 similarly requires newly-constructed or altered roads and walkways to contain curb ramps at intersections. 28 C.F.R. § 35.151(e).

47. Georgia is a qualified individual with disabilities as defined in Section 504 of the Rehabilitation Act of 1973. As a low income and disabled person, Georgia meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by Ponderosa Acres and the Defendants.

48. The Defendants administer a program or activity, Project based Section-8 housing, that receives federal financial assistance from HUD.

49. The Defendants are aware that they have disabled residents living at Ponderosa Acres.

50. The Defendants discriminate against disabled residents, including Georgia, by failing to provide reasonable accommodations for their disabilities, including but not limited to, no recessed curbs or disability accessible curbs, no handrails, no wheelchair ramps or disability accessible ramps, no disabled parking or access for family members of disabled residents to pick them up or drop them off.

51. The Defendants discriminate against disabled persons solely on the basis of their disabilities in violation of Section 504.

52. In failing to provide adequate accommodations for disabled residents, the Defendants discriminated against Georgia on the basis of her disability in violation of 29 U.S.C. § 794.

53. In doing the acts and/or omissions herein alleged, Defendants deliberately discriminated against the rights of Georgia, which actually and proximately caused the unnecessary infliction of pain and physical injury on Georgia, resulting in his severe injuries, including a broken neck, extreme pain and suffering, altered life, loss of consortium, emotional distress and economic damages.

54. As a result of the Defendants' acts and/ or omissions, Georgia was subjected to discrimination and unnecessary injuries. As a result thereof, Georgia is

entitled to compensatory damages under 29 U.S.C. § 794 in an amount to be determined at trial.

55. As a direct and proximate result of the Defendants' conduct in violation of Section 504, Georgia has suffered economic damages in the form of past and future lost wages from employment, lost benefits of employment, and the costs of medical treatment; and is entitled to an award of economic damages in an amount to be determined at trial.

56. As a direct and proximate result of the Defendants' unlawful discrimination, Georgia has suffered noneconomic damages in the form of discrimination on the basis of her disability, loss of equal access to benefits and services, physical and mental pain and suffering, severe emotional distress, loss of consortium, shame, and public embarrassment, humiliation, and degradation, all to her noneconomic damage; and she is entitled to recover an award of noneconomic damages in an amount to be determined at trial.

57. The aforementioned acts and/or omissions of the Defendants were malicious, reckless and/or accomplished with a conscious disregard of Georgia's rights thereby entitling Georgia to an award of exemplary and punitive damages according to proof.

58. Georgia is entitled to an award of reasonable attorneys' fees, expert fees, and costs incurred herein. 29 U.S.C. §794a(b).

## COUNT II - NEGLIGENCE (AGAINST ALL DEFENDANTS)

59. Georgia repeats and realleges each and every allegation in paragraphs 1 through 58 of this Complaint with the same force and effect as if fully set forth herein.

60. The Defendants owed Georgia, a resident at Ponderosa Acres, a duty of care.

61. Defendants had a duty to provide and maintain a safe environment for Georgia while she lived at Ponderosa Acres. They further had a duty to provide adequate disability compliant facilities to Georgia.

62. Defendants knew Georgia was disabled and needed disability accessible curbs, ramps, parking, and handrails. These were not provided by the Defendants.

63. The Defendants knew Georgia had to access the street to get to her transportation rather than the parking lot near her apartment. The Defendants knew Georgia had to maneuver up and down curbs, which were not disabled accessible, with her walker. The defendants knew their failure to provide these things would result in injury.

64. Defendants breached their duty owed to the Georgia, by negligently failing to provide disability accessible curbs, ramps, parking, or handrails.

65. Defendants breached their duty owed to Georgia, by negligently failing to allow Georgia's family to come on Ponderosa Acres to park their vehicle for picking up and dropping off Georgia.

66. The Defendants' breach of the duties owed to Georgia were the direct and proximate cause of Georgia's fall which resulted in her breaking her neck. The Defendants' breach of the duties owed to Georgia are the direct and proximate cause of her injuries and damages in an amount to be determined at trial.

67. If there would have been disability accessible curbs or ramps, Georgia would not have tripped on the curb and fell which resulted in her breaking her neck.

68. Georgia sustained damages due to the Defendants' negligence in the form of compensatory and special damages, including but not limited to, pain and suffering, loss of consortium, and economic damages.

## COUNT III - NEGLIGENCE PER SE
## (AGAINST ALL DEFENDANTS)

69. Georgia repeats and realleges each and every allegation in paragraphs 1 through 68 of this Complaint with the same force and effect as if fully set forth herein.

70. "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *McGrath ex rel. Montana v. Janssen, LP*, No. CV 09-58-H-CCL, 2009 WL 9136812, at *4 (D. Mont. Nov. 30, 2009) (*citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318-19 (2005) (*quoting* Restatement (Third) of Torts § 14, Reporters' Note, Comment a, p. 195 (Tent.Draft No. 1, March 28, 2001)).

71. Defendants violated 29 U.S.C. § 794, which is a federal statute. The violation of this statute can form the basis of a negligence per se claim under Montana State law.

72. Defendants were negligent as a matter of law in that they failed to provide disability accessible curbs, ramps, parking, or handrails to Georgia. They discriminated against Georgia based on her disability.

73. The violation of this federal statute can be the basis for a state negligence per se claim. Georgia is disabled and this statute was enacted to protect disabled persons like Georgia. Georgia's injuries, such as: broken neck, pain and suffering, emergency medical care, surgeries, future surgeries, lost wages, lost quality of life, emotional distress, loss of consortium and exacerbated medical issues, are the types of injuries this statute was created to protect against. The Defendants are in the class of defendants that this federal statute was created

to regulate because the Defendants receive federal funding and provide Section-8 Housing to disabled people.

74. Defendants' failure to properly provide disability accessible curbs, ramps, parking, or handrails to Georgia caused her to fall and break her neck which resulted in damages and losses in an amount to be determined at trial.

## COUNT IV - RIGHT TO INDIVIDUAL DIGNITY

## (AGAINST ALL DEFENDANTS)

75. Georgia repeats and realleges each and every allegation in paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

76. Pursuant to Mont. Const. Art. II § 4, the dignity of the human being is inviolable.

77. Georgia is disabled and is afforded civil rights because of her disability.

78. Defendants violated Georgia's right to individual dignity when they refused to provide her with disability accessible curbs, ramps, parking, or handrails.

79. Defendants violated Georgia's right to individual dignity when they refused to allow her family to come onsite to provide her with transportation.

80. Defendants violated Georgia's right to individual dignity when they forced Georgia to leave Ponderosa Acres, while recovering from a broken neck, because her son's children were living onsite with Georgia.

81. Georgia suffered damages and is entitled to relief in an amount to be determined at trial.

## COUNT V - PUNITIVE DAMAGES

## (AGAINST ALL DEFENDANTS)

82. Georgia repeats and realleges each and every allegation in paragraphs 1 through 81 of this Complaint with the same force and effect as if fully set forth herein.

83. Pursuant to Mont. Code § 27-1-221(1), reasonable punitive damages may be awarded when a defendant has been found guilty of actual malice.

84. The Defendants have acted with actual malice in regards to their intentional disregard for the residents, including Georgia, at Ponderosa Acres. The Defendants knew there were disabled residents at Ponderosa Acres, including Georgia, but refused to provide disability accommodations to them.

85. The Defendants have deliberately and intentionally proceeded to act in conscious disregard of the high probability of injury to Georgia by failing to

provide the necessary accommodations, even after being asked to do so and being required to do so under Federal Law.

86. Georgia has suffered immensely and has accrued many damages because of the Defendants acts or omissions. Therefore, she is entitled to relief under the statute.

## REQUESTED RELIEF

87. WHEREFORE, Plaintiff, Georgia Steckly, requests that this Court: Award compensatory damages, punitive damages, costs, attorney's fees, injunctive relief, and any other relief it deems appropriate.

Date: _____8/23/2018_____

Vincent Salminen
Scheveck & Salminen
Law Firm, PLLC
2223 Montana Avenue Suite #103
Billings, MT 59101
vince@schevecklaw.com
Telephone: (406) 894-2121

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the clerk of the court for the United States District Court for the District of Montana, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*[signature]*

Vincent Salminen

Scheveck & Salminen Law Firm, PLLC

Attorney for Plaintiff